UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JUDY A. DAYTON,

Plaintiff,

v.

SEARS ROEBUCK AND CO.; SEARS HOLDINGS MANAGEMENT CORPORATION; and DOES 1 to 100, inclusive,

Defendants.

No. 2:12-cv-01945-TLN-CKD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court pursuant to Defendants Sears Roebuck and Company, Sears Holdings Management Corporation, and Does 1 to 100's (collectively "Defendants") motion for summary judgment. (Defs.' Mot. for Summ. J., ECF No. 33.) Plaintiff Judy Dayton ("Plaintiff") opposes Defendants' motion. (Opp. to Defs.' Mot. for Summ. J., ECF No. 38.) The Court has carefully considered the arguments raised by both parties. For the reasons set forth below, Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

## I. PROCEDURAL HISTORY

Plaintiff filed her complaint against her former employers, Defendants, on June 13, 2012, in the Superior Court of California, County of Sacramento. In her complaint, Plaintiff alleged that Defendants illegally discriminated against her and refused to accommodate her disability

needs. Defendants filed an answer on June 27, 2012. On July 24, 2012, Defendants removed the case to federal court. (Notice of Removal, ECF No. 1.) On February 20, 2014, Defendants moved for summary judgment. (ECF No. 33.) Plaintiff opposed the motion. (ECF. No. 38.)[1]

## II. FACTUAL HISTORY

The following facts are drawn from Plaintiff's complaint unless otherwise indicated. Defendants have moved for summary judgment, thus, the facts are taken in the light most favorable to the Plaintiff, some of which are disputed. *See Doe v. Starbucks, Inc.*, No. SACV 08-0582 AG CWX, 2009 WL 5183773 (C.D. Cal. Dec. 18, 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Plaintiff alleges that she was forced to take medical leave from her position as assistant store manager ("ASM") of the Sears store at Sunrise Mall, Citrus Heights, California because Defendants refused to make reasonable accommodations for her when her chronic foot condition made her unable to perform her duties. (Compl., ECF No. 1, Ex. A at ¶¶ 7–14.) Plaintiff began working for Defendant Sears in 1971 and worked intermittently for the company for a total of 29 years. (ECF No. 1, Ex. A at ¶¶ 11–12.)

From 2003 to 2010, Plaintiff worked as a loss prevention manager until she was promoted to ASM at the Sears store in Sunrise Mall. (ECF No. 1, Ex. A at ¶ 12.) The position of ASM required Plaintiff to stand or walk approximately fifty percent of the time she was at work. (ECF No. 1, Ex. A at ¶ 17.) Since 2002, Plaintiff has suffered from a degenerative type of arthritis in her right foot, known as Hallux Rigidus. (ECF No. 1, Ex. A at ¶ 14.) As a result of this condition, Plaintiff wore special orthotics in her shoes and Defendants granted her a special accommodation to wear athletic shoes at work after Plaintiff provided the HR department with documentation of her condition in 2002. (ECF No. 1, Ex. A at ¶ 14.)

Plaintiff suffered increasing pain and was diagnosed with additional deformities of her foot and ankle in September of 2011. (ECF No. 1, Ex. A at ¶ 19.) When new orthotics did not

[1] Plaintiff also filed a motion to strike certain evidence from Defendants' case. (Pl.'s Mot. to Strike, ECF No. 51.) Defendants opposed this motion and filed a cross-motion to strike evidence from Plaintiff's case. (Resp. to Pl.'s Mot. to Strike, ECF No. 55; Defs.' Mot. to Strike, ECF No. 57.) Plaintiff opposed this motion. (Resp. to Defs.' Mot. to Strike, ECF No. 59.) The Court has ruled on these motions. (ECF No. 62.) The Court will not address these issues herein, except to the extent that they are dispositive of this motion.

relieve the pain, Plaintiff believed she needed a new position with less walking to accommodate her disability. (ECF No. 1, Ex. A at ¶ 19.) Plaintiff's alleges that she informed her store manager, Ms. Nichols, of her intent to find a position that required less walking and expressed an interest in an open position as a territory regional loss prevention manager. (ECF No. 1, Ex. A at ¶¶ 21–22.) Plaintiff perceived Ms. Nichols to be unhappy that she wanted to leave the store. (ECF No. 1, Ex. A at ¶ 23.)

Plaintiff's alleges she was rejected for the territory regional loss prevention manager position just over two weeks after applying. (ECF No. 1, Ex. A at ¶ 24.) The position of territorial regional loss prevention manager remained unfilled and was posted again in January of 2012. (ECF No. 1, Ex. A at ¶ 25.)

On December 23, 2011, Plaintiff's doctor, Dr. Brian McDowell, provided her with a disability certificate, stating that she needed sedentary work with no walking. (ECF No. 1, Ex. A at ¶ 27.) Plaintiff alleges she informed Ms. Nichols that she was in unbearable foot pain and attempted to give Ms. Nichols the certificate. (ECF No. 1, Ex. A at ¶ 27.) According to Plaintiff's complaint, Ms. Nichols refused to accept the certificate and informed Plaintiff that "[t]here is no position in this store that requires no walking. There isn't even a position in the whole company that requires no walking because you will always need to walk to get to a desk." (ECF No. 1, Ex. A at ¶ 28.) Plaintiff asked what she was supposed to do because she could not continue walking on her foot. Plaintiff alleges that Ms. Nichols told her to follow her doctor's instructions and left the office. (ECF No. 1, Ex. A at ¶ 28.)

Ms. Nichols left for her vacation in Hawaii the next day, and Plaintiff was supposed to be in charge of the store in the store manager's absence. (ECF No. 1, Ex. A at ¶ 29.) On December 27, 2011, Plaintiff went on disability leave. (ECF No. 1, Ex. A at ¶ 30.) Plaintiff contacted Ms. Nichols and informed her she had opened a short-term disability claim by contacting 88 SEARS, a company-wide Human Resources ("HR") hotline and reference center located in India. (ECF No. 1, Ex. A at ¶ 30.) Plaintiff notified Ms. Nichols she would not be returning to work until her problems with her foot were resolved; Plaintiff also informed Ms. Nichols that she had made arrangements for others to cover her shifts. (ECF No. 1, Ex. A at ¶ 30.)

On January 4, 2012, Plaintiff's physician, Dr. McDowell, completed the California Leave Medical Certification Form that Sears requires its employees to fill out and returned the form to the HR office. (ECF No. 1, Ex. A at ¶ 32.) On January 9, 2012, Mr. Garcia, the HR manager, emailed Plaintiff to confirm he had received the paperwork and that he had forwarded it to the Associate Service Center in Atlanta, Georgia. (ECF No. 1, Ex. A at ¶ 32.) Plaintiff called 88 SEARS again on January 4, 2012, and was notified that her short term disability claim with Cigna Group Insurance ("CIGNA") had been declined. (ECF No.1, Ex. A at ¶ 33.)

Plaintiff contacted Cigna on January 5, 2012, and was told that her claim had not been denied and was still pending. (ECF No. 1, Ex. A at ¶ 34.) By January 9, 2012, the claim was still pending and 88 SEARS informed Plaintiff that she would stop receiving a paycheck in two weeks. (ECF No. 1, Ex. A at ¶ 34.) Plaintiff alleges she received a call on February 2, 2012, from Ms. Nichols, who told her she was still employed with Sears, but that the company had changed the designation of her leave from medical to personal, because approval of her Cigna claim was pending. (ECF No. 1, Ex. A at ¶ 35.) Plaintiff was informed that her medical leave would expire on March 28, 2012. (ECF No. 1, Ex. A at ¶ 40.) At that time, Plaintiff alleges Ms. Nichols also suggested that Plaintiff could come back to work in a wheelchair, particularly because Ms. Nichols was going on vacation in March and wanted Plaintiff back to work. (ECF No. 1, Ex. A at ¶ 36.)

On February 6, 2012, Plaintiff saw her physician again. (ECF No. 1, Ex. A at ¶ 37.) Her physician extended her leave until April 30, 2012, when Plaintiff's condition could be reevaluated. (ECF No. 1, Ex. A at ¶37.) The physician cited Sears' lack of a sedentary position as the reason for the extension. (ECF No. 1, Ex. A at ¶ 37.) Plaintiff authorized the release of her medical records to Defendants for the purposes of her disability leave. (ECF No. 1, Ex. A at ¶ 39.)

On February 16, 2012, Plaintiff alleges Ms. Nichols contacted Plaintiff and informed her that the 12 weeks of medical leave she was entitled to under the California Family Rights Act ("CFRA") would expire on March 28, 2012, but that the company offered "Extended Care Leave," which did not protect her job. (ECF No. 1, Ex. A at ¶ 40.) Plaintiff repeated her request

for a job with no walking, and Ms. Nichols repeated her suggestion that Plaintiff could use a wheelchair and return to work. (ECF No. 1, Ex. A at ¶ 41.)

Plaintiff received a call from Ms. Karunanithi, a representative of Sears Holding Corporation, on March 14, 2012, inquiring when she would be returning to work. (ECF No. 1, Ex. A at ¶ 44.) On March 15, 2012, Plaintiff alleges that access to her company email account and Sears websites were blocked. (ECF No. 1, Ex. A at ¶ 44.) On March 19, 2012, Plaintiff again received a call from Ms. Nichols, inquiring if Plaintiff intended to return to work and repeating that there were no desk jobs open. (ECF No. 1, Ex. A at ¶ 45.) Plaintiff responded that she did not know when she would return, but that she had an appointment with her doctor later that week. (ECF No. 1, Ex. A at ¶ 45.) Plaintiff received a letter on April 6, 2012, informing her that her leave under CFRA had expired and that her leave was now designated as "Extended Care Leave." (ECF No. 1, Ex. A at ¶ 49.) Defendants sent letters to Plaintiff's lawyer following this April 6 letter, and received no reply from either Plaintiff or counsel. (ECF No. 34 at 11.) Plaintiff's employment was officially terminated by Defendants on July 26, 2012. (ECF No. 34 at 11.)

## III. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

"must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

## IV. ANALYSIS

### a. Disability Discrimination in Violation of FEHA (Count I)

Plaintiff has alleged two causes of action under California's Fair Employment and Housing Act ("FEHA"). Gov't. Code § 12900 et seq. The first cause of action Plaintiff alleges is disability discrimination under FEHA. (ECF No. 1, Ex. A at¶¶ 50–55.) Plaintiff's complaint alleges that Defendants' actions were intentional, thereby supporting a claim of disparate treatment. (ECF No. 1, Ex. A at ¶ 54 and *Scotch v. Art Institute of California-Orange County, Inc.*, 173 Cal. App. 4th 986, 1002 (2009).)

To establish a prima facie case of disparate treatment discrimination, a plaintiff must prove…. "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action… and (4) some other circumstance suggests discriminatory motive." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (2000). If a plaintiff makes this showing, the burden then shifts to the defendant to show that his actions were taken for a legitimate, non-discriminatory reason. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). If the defendant can present a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to demonstrate that the defendant's reason is a pretext for discrimination, or offer other evidence of a discriminatory motive. *Scotch*, 173 Cal. App. 4th at 1004. Within the framework of the *McDonnell Douglas* burden-shifting, the ultimate burden for proving pretext for discrimination lies with the plaintiff at trial. *Artega v. Brink's Incorporated*, 163 Cal. App. 4th, 327, 343 (2008).

In their motion for summary judgment, Defendants argue that Plaintiff failed to demonstrate an adverse employment action because: 1) Plaintiff was terminated for a non-discriminatory reason; and 2) Defendants' decision not to interview Plaintiff for the Territory Loss Prevention Manager position was for a legitimate business reason. (Mem. in Supp. of Defs.'

Mot. for Summ. J., ECF No. 34 at 12–16.) Defendants do not dispute that Plaintiff has presented a prima facie showing. Therefore, the Court moves directly to Defendants' proffered reasons that their actions were non-discriminatory.

*i. Constructive Discharge as an Adverse Action*

With respect to their first argument, Defendants assert that Plaintiff did not suffer an adverse employment action because she was terminated for a non-discriminatory reason when she failed to return from medical leave or provide medical documentation justifying the need for extending her leave. (ECF No. 34 at 14.) Defendants argue that Plaintiff was provided medical leave until April 30, 2012, but failed, despite repeated requests, to provide additional documentation supporting further leave. Despite this lack of documentation, Defendants permitted Plaintiff to remain on a leave of absence for an additional twelve week period and she was terminated on July 26, 2012. (ECF No. 34 at 16.)

Plaintiff responds that the adverse employment action she suffered was not her actual discharge, but the constructive discharge she suffered in March 2012.[2] (ECF No. 38 at 24.) Plaintiff asserts that she had contacted Defendants more than seven times in an effort to receive accommodation for her disability and was convinced that further attempts would be futile. (ECF No. 38 at 24.) The Ninth Circuit has found that constructive discharge is a sufficient adverse action to form the basis of a FEHA claim. *King v. AC & R Adver.*, 65 F.3d 764, 767 (9th Cir. 1995); *Juell v. Forest Pharm., Inc.*, 456 F. Supp. 2d 1141, 1150–51 (E.D. Cal. 2006) (Damrell, J.). Thus, Defendants' assertions that Plaintiff was terminated for a legitimate reason, i.e. her failure to submit medical documentation, are irrelevant since Plaintiff's claim of constructive discharge can form the basis of an adverse action under FEHA. Plaintiff argues that the source of

---

[2] The exact timing of Plaintiff's alleged constructive discharge is unclear. In her complaint, Plaintiff states that, after an April 6, 2012, letter of expiration of family leave, Defendants had not communicated with Plaintiff in any other manner and that Plaintiff had been "effectively constructively discharged from her position." (ECF No. 1 at ¶ 59.) That complaint was filed on June 13, 2012, in Sacramento Superior Court, before Defendants sent out the July letter of discharge. In Plaintiff's opposition to Defendants' motion for summary judgment, Plaintiff states that, by April 2012, Plaintiff "was done." (ECF No. 38 at 23.) In Plaintiff's responses to Defendants' statement of undisputed facts, Plaintiff claims she was constructively discharged on March 23, 2012. (ECF No. 40 at ¶50–51.) In Plaintiff's March 10, 2014 declaration, Plaintiff claims that, after a final attempt to seek a sedentary position in March 2012, Plaintiff decided she did not want to return to Sears. (ECF No. 42 at ¶ 24.) For the purpose of discussing Plaintiff's claim of constructive discharge, the Court will assume, without deciding, that the date Plaintiff alleges she was constructively discharged was late March 2012.

her termination, constructive discharge, arose from Defendants' refusal to accommodate Plaintiff's disability when she repeatedly expressed a desire to return to work, not their ultimate decision to terminate her after she ceased to engage with Defendants. In this respect, Defendants have not presented a legitimate, non-discriminatory reason for Plaintiff's constructive discharge.

As discussed in Section IV.d, *supra*, Plaintiff has presented sufficient evidence for a reasonable juror to determine that any further attempts to return to work with accommodations would be futile. Therefore, Plaintiff's allegation of constructive discharge is a sufficient adverse action to allow her FEHA claim to survive summary judgment.

*ii. Rejection of Job Application as an Adverse Action*

Defendants' second argument in favor of dismissal is that Defendants' decision not to interview Plaintiff for the position of Territory Loss Prevention Manager cannot be considered an adverse action under FEHA because it arose from a legitimate business decision. (ECF No. 34 at 14.) Defendants argue that "Plaintiff did not have the required multi-unit experience, a specific requirement for the position" and was therefore screened out. (ECF No. 34 at 15.) Defendants further argue that the position would have required extensive travel and walking and therefore would not be suitable for Plaintiff. (ECF No. 34 at 15.) Finally, Defendants argue that the position would have been a promotion for Plaintiff and that Defendants were not required to provide Plaintiff with a promotion as an accommodation. (ECF No. 34 at 15.) Plaintiff did not respond to Defendants' arguments in her opposition to Defendants' motion and reiterates that her discrimination claim is based on her constructive discharge. (ECF No. 38 at 24.)

The Court is persuaded by Defendants' analysis on this point. Defendants provide ample factual evidence to support their contention that the decision not to hire Plaintiff was a legitimate business decision. Because Defendants presented a legitimate, non-discriminatory reason for the alleged adverse employment action, the burden rests with Plaintiff to demonstrate that the Defendants' reasons are a pretext for discrimination, or offer other evidence of a discriminatory motive. *Scotch v. Art Institute of California-Orange County, Inc.*, 173 Cal. App. 4th 986, 1004 (2009). Plaintiff has failed to do so with respect to this allegation. Therefore, the fact that she was not selected for this new position cannot support a claim under FEHA.

However, the fact that Plaintiff cannot demonstrate an adverse action in her failure to be selected for this single position is not fatal to her claim. Plaintiff's alleged constructive discharge is sufficient to support her discrimination claim under FEHA. Therefore, Defendants' motion to dismiss this claim is hereby DENIED.

b. Failure to Accommodate and Engage in the Interactive Process (Count II)

The second cause of action Plaintiff alleges under FEHA is that Defendants failed to accommodate her disability and engage in the interactive process. (ECF No. 1, Ex. A at ¶¶ 56–66.) Although Plaintiff brings this claim as a single cause of action, failure to accommodate and failure to engage in the interactive process are two separate theories, each with their own elements. Therefore, the Court will consider each separately.

*i. Failure to Accommodate*

FEHA requires employers of fifty or more employees to make reasonable accommodations for their employees' known disabilities. Gov't Code § 12940(m). In order to succeed in a claim for failure to accommodate, a plaintiff must prove the following: (1) the plaintiff has a disability under FEHA; (2) the plaintiff is qualified to perform the essential functions of the position; and (3) the employer failed to reasonably accommodate the plaintiff's disability. *Scotch*, 173 Cal. App. 4th at 1009–10. An employer must reasonably accommodate a disabled employee unless the employer can demonstrate that doing so would cause undue hardship. *Spitzer v. The Good Guys, Inc.*, 80 Cal. App. 4th 1376, 1383 (2000). A reasonable accommodation is "a modification or adjustment to the workplace that enables the employee to perform the essential functions of the job held or desired." *Nadaf-Rahrov v. Neiman Marcus Grp., Inc.*, 166 Cal. App. 4th 952, 974 (2008).

Where the employee can no longer perform the essential functions of the job she currently occupies, an employer has an affirmative duty to reassign a disabled employee to another open position for which she is qualified. *Spitzer*, 80 Cal. App. 4th at 1389. This duty does not require an employer to create a new position for the disabled employee, promote the disabled employee, transfer another employee to create an opening for the disabled employee, or violate other employees' collective bargaining agreements. *Hastings v. Dep't of Corr.*, 110 Cal. App. 4th 963,

972 (2003). However, an employer who knows of an employee's disability "has an affirmative duty to make known to the employee other suitable job opportunities with the employer and to determine whether the employee is interested in, and qualified for, those positions" that are currently open, as long as doing so would not lead to undue hardship for the employer. *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 950–51 (1997).

On a summary judgment motion for a claim of failure to reasonably accommodate, an employer cannot prevail unless it establishes through undisputed facts that:

> (1) reasonable accommodation was offered and refused;
>
> (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or
>
> (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith.

*Jensen v. Wells Fargo Bank*, 85 Cal. App. 4th 245, 263 (2000). The disabled employee bears the greater burden of identifying their capabilities and limitations, while the employer bears the greater burden of identifying reasonable accommodations because of the employer's greater access to information about possible accommodations or open, alternative positions. *Id.* at 265 (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1113 (9th Cir. 2000)).

Defendants argue that they properly accommodated Plaintiff by providing her with the medical leave of absence she requested. (ECF No. 34 at 16.) Defendants assert that holding a job open for a disabled employee who needs time to recuperate is a reasonable accommodation and that Plaintiff herself suggested that her condition was temporary. (ECF No. 34 at 17 (citing *Hanson v. Lucky Stores, Inc.* 74 Cal. App. 4th 215, 226 (1999).) Defendants further argue that even if they had a duty to accommodate Plaintiff by offering her a different position or modifying her responsibilities in her current position, that duty had not been "triggered" because Plaintiff had not yet been released to work. (ECF No. 34 at 18.)

The Court does not find Defendants' arguments on this point to be persuasive.

Defendants' argument ignores the undisputed fact that, at the very least, Plaintiff sought an accommodation of a position involving less walking on multiple occasions, beginning on December 24, 2011. (Plf.'s Resp. to Defs.' Statement of Undisputed Facts ("SUF") ECF 40 at ¶¶ 3–4.) Plaintiff states that she communicated to her store manager that she was having trouble walking as part of her job. At that time, Plaintiff attempted to provide Ms. Nichols with a note from her doctor seeking a desk job. Plaintiff provides evidence that Ms. Nichols herself stated in deposition that this incident occurred and that, at the time, she did not offer an accommodation to Plaintiff because she "really didn't think about it." (Pltf.'s Mem. in Opp. to Dft's Mot. for Summ. Judg., ECF No. 38 at 10.) Plaintiff states that as a result of the conversation, she felt "forced" to go on medical leave. However, Plaintiff maintains that she indicated to Defendants throughout her medical leave of absence that she sought a sedentary position with her employer. (ECF No. 38 at 11.) Moreover, Defendants' claim that their duty to accommodate Plaintiff with a different position was not "triggered" during her medical leave of absence is disingenuous. Defendants acknowledged that they received the FMLA Medical Certification form from Dr. McDowell, which specified that although Plaintiff could not perform essential functions of her job, she was able to work, but needed to be off her feet. (ECF No. 38 at 11 and SUF ¶ 12.) Plaintiff further stated, and provided evidence in support, that she frequently communicated with her store manager about finding an accommodation that would allow her to return to work. *See* Section IV.d.i, *infra*.

The Court finds no evidence that Plaintiff indicated to Defendants that she would be able to resume her previous job without accommodation. Inferring the facts reasonably in favor of the non-moving party, the Court finds sufficient factual evidence that Plaintiff sought accommodation of her condition prior to her medical leave of absence and that Plaintiff continued to seek such an accommodation during her leave of absence. Plaintiff provided undisputed evidence that she sought an accommodation to allow her to continue working or, alternately, to return to work from medical leave. Defendant failed to adequately demonstrate that they could not accommodate Plaintiff with a more sedentary position. On this basis, the Court finds sufficient evidence for a trier of fact to determine that Defendants failed to accommodate Plaintiff

and therefore DENIES Defendants' motion for summary judgment on this issue.

*ii. Failure to Engage in the Interactive Process*

This Court is similarly unpersuaded by Defendants' arguments seeking to dismiss Plaintiff's claim for failure to engage in the interactive process. Employees and employers covered by FEHA have a duty to engage in an interactive process in good faith to find a reasonable accommodation for a disabled employee. Gov't. Code § 12940(n); *Reese v. Barton Healthcare Sys.*, 693 F. Supp. 2d 1170, 1186 (E.D. Cal. 2010). FEHA requires this informal process involving the employer and the employee in order to identify a reasonable accommodation that will allow the employee to perform their job effectively. *Scotch*, 173 Cal. App. 4th at 1013. The employee must initiate the process by informing the employer of the employee's disability and need for accommodations, unless both the disability and its resulting limitations are obvious. *Id.*

"Although it is the employee's burden to initiate the process, no magic words are necessary, and the obligation arises once the employer becomes aware of the need to consider an accommodation." *Gelfo v. Lockheed Martin Corp.*, 140 Cal. App. 4th 34, 62, fn. 22 (2006). Both employee and employer have an obligation "to keep communications open and neither side has a right to obstruct the process." *Jensen*, 85 Cal. App. 4th at 266. The obligation to engage in the interactive process does not end with a single attempt at accommodation, but continues when an employee asks for a different accommodation, or when the employer becomes aware that the first accommodation is not working and that a new accommodation may be necessary. *Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1138 (9th Cir. 2001).

Each party must participate in the process in good faith, and the parties are expected to keep communications open and share information to find an accommodation. *Scotch*, 173 Cal. App. 4th at 1014. On a summary judgment motion, the burden is on the moving party to demonstrate that there are no disputed facts as to which party obstructed the process or failed to act in good faith. *Jensen*, 85 Cal. App. 4th at 266–67.

Plaintiff states that she attempted to seek an appropriate accommodation from Defendants a number of times throughout her medical leave of absence, which occurred after she sought

accommodation from Ms. Nichols on December 24, 2011. Specifically, in her opposition to Defendants' summary judgment motion, Plaintiff recounts seven instances in which she sought an accommodation to allow her to return to employment. (ECF No. 38 at 10–14.) Defendants did not provide any evidence that they offered an accommodation that was refused, that a different or modified position was impossible, or that Plaintiff acted in bad faith. Despite Plaintiff repeatedly telling Defendants that she was seeking an accommodation in order to return to work, Defendants simply failed to respond. Thus, Defendants have failed to demonstrate that Plaintiff did not engage in the interactive process – in fact, the record indicates that it was Defendants who failed to respond to Plaintiff's attempts to engage in such a process. The Court finds sufficient evidence for the trier of fact to find in favor of the Plaintiff on this issue and therefore DENIES Defendants' motion for summary judgment on this issue.

c. Discrimination/Interference in Violation of CFRA[3] (Count III)

In her third cause of action, Plaintiff complains Defendants interfered with her protected leave under CFRA by unjustifiably reclassifying Plaintiff's leave as "personal" rather than "medical." (ECF No. 1, Ex. A at ¶ 70.) To support this, Plaintiff cites a single conversation she had with Ms. Nichols where Ms. Nichols mentioned that, since CIGNA had not approved Plaintiff's disability claim at the time the conversation took place, Plaintiff's leave had been reclassified as personal, pending CIGNA's decision. (ECF No. 1, Ex. A at ¶ 35.)

CFRA requires covered employers of 50 or more employees to grant employee's requests for up to twelve work weeks of family care and medical leave within any twelve-month period. Cal. Gov't Code § 12945.2(a); *see Faust v. Cali. Portland Cement Co.*, 150 Cal. App. 4th 864, 878 (2007). An employer must guarantee that the employee taking a leave of absence is guaranteed the right to return to the same or comparable employment position at the end of the leave. Cal. Gov't Code § 12945.2(a). It is the duty of the employee to inform the employer that the employee needs qualifying leave. *Faust*, 150 Cal. App. 4th at 879–80.

---

[3] CFRA parallels the federal Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., and, where the language of the acts is substantially the same, California courts have interpreted the two acts in the same way. *Dudley v. Dep't of Transp.*, 90 Cal. App. 4th 255, 261 (2001). This Court will therefore use case law relating to both CFRA and FMLA leave on this issue, even though Plaintiff only brought her claims under CFRA.

CFRA makes it unlawful for employers to interfere with an employee's right to this leave. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003). To state a claim for interference of CFRA-protected leave, Plaintiff must show:

1. Plaintiff is eligible for protection under CFRA;
2. Defendant employer is a covered employer under CFRA;
3. Plaintiff is eligible for leave under CFRA;
4. Plaintiff provided sufficient notice of the need for leave; and
5. Defendant employer denied or interfered with Plaintiff taking leave.

*Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011). Unlike other causes of action based on discrimination, CFRA does not apply a *McDonnell Douglas* burden shifting. *Bachelder v. American West Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001); *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1135 (9th Cir. 2003). In this case, there is no dispute that the first four elements of this test are met.[4] The only issue is whether Defendants interfered with Plaintiff's leave.

Plaintiff does not deny that she received more than twice the required twelve weeks of leave from Defendants. (ECF No. 40 at ¶¶ 80–81.) Instead, Plaintiff's claim of interference appears to center on a single conversation she had with Ms. Nichols, where Ms. Nichols allegedly told Plaintiff that her leave had been changed from medical to personal. (ECF No. 1, Ex. A at ¶ 70; ECF No. 37-4 at 71–72.) Mischaracterizing FMLA or CFRA leave as personal leave can be grounds for an interference claim if the mischaracterization discourages the employee from exercising her rights under CFRA. *Xin Liu*, 347 F.3d at 1134–35. In *Xin Liu*, the plaintiff was refused extensions of her maternity leave because her supervisor had officially classified the leave as personal rather than medical. *Id.* at 1130–31. While the plaintiff ultimately received the amount of time off she requested, she was denied extensions and had to ask for them multiple times. *Id.* at 1135. The court found that the mischaracterization of the leave interfered with the

---

[4] As to the first element, Defendants have not argued that Plaintiff was not disabled or eligible for leave under CFRA. (*See generally* ECF No. 34; ECF No. 40.) Defendants do not deny they are considered covered employers within the requirements of CFRA (which requires compliance from all employers who employ fifty or more employees to perform work for wages or salary. Cal. Gov. Code § 12945.2(c)(2)(A).) (*See generally* ECF No. 34.) Defendants also do not argue that Plaintiff was ineligible for medical leave, or that Plaintiff did not provide sufficient notice that she needed medical leave. (*See generally* ECF No. 34; ECF No. 40.)

plaintiff's rights under CFRA because, when the leave was officially classified as personal rather than medical, the plaintiff's supervisor felt he had discretion to deny extensions. *Id.* at 1134.

In Plaintiff's case, the letters and official documentation from Sears clearly state that Defendants considered Plaintiff's leave to be medical. (ECF No. 37-5 at 50, 54, 101–02.) The Court finds that Plaintiff's case is distinguishable from *Xin Liu*. Here, Defendants officially classified Plaintiff's leave as medical leave and acted accordingly, as the documents Defendants sent Plaintiff clearly state. (ECF No. 37-5 at 50, 54, 101–02.) Plaintiff's subjective belief that her leave had been reclassified—based on a single remark from Ms. Nichols—is not enough to demonstrate interference with Plaintiff's ability to exercise her rights under CFRA. Here, Defendants granted Plaintiff the full 12 weeks required under statute, plus additional time off, totaling seven months. (ECF No. 40 at ¶¶ 80–81.) *Cf. Xin Liu*, 347 F.3d at 1135 (holding that the misclassification gave the plaintiff's supervisor the impression that he had discretion to deny the plaintiff's requests for extension of her leave.) There is no evidence that Defendants attempted to cancel Plaintiff's leave or deny any requests for extension of time. There is no evidence that Ms. Nichols ever tried to force Plaintiff to return, or that she took any action to compel Plaintiff's return.

Plaintiff has not satisfied the burden of showing there is a disputed issue of material fact relating to the issue of interference with CFRA leave. The Court GRANTS Defendants' motion for summary judgment on this count.

d. Wrongful Discharge in Violation of Public Policy (Count IV)

Plaintiff's fourth cause of action claims that Defendants committed the common law tort of wrongful discharge in violation of public policy when Defendants' failure to accommodate Plaintiff resulted in her constructive discharge. (ECF No 1, Ex. A at ¶ 75.) Plaintiff alleges discharging her in this manner was a violation of public policy against disability discrimination. (ECF No. 38 at 22–24.)

In order to prove a tort claim for wrongful discharge in violation of public policy, Plaintiff must show: 1) Plaintiff was employed by Defendants; 2) Defendants discharged Plaintiff; 3) the alleged violation of public policy was a motivating reason for discharge; and 4) the discharge

caused Plaintiff harm. *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004).

"As a general rule, the public policy against disability discrimination, articulated in FEHA and other statutes, inures to the public's benefit and is sufficiently substantial and fundamental to support a cause of action for wrongful discharge in violation of public policy." *Ross v. RagingWire Telecommunications, Inc.*, 42 Cal. 4th 920, 943 (2008). Claims under FEHA also can be brought in conjunction with common law claims. *Rojo v. Kliger*, 52 Cal. 3d 65, 82 (1990) (holding that "the FEHA does not displace any causes of action and remedies that are otherwise available to plaintiffs"). Furthermore, neither party disputes that Plaintiff was employed by Defendants. (ECF No. 40 at ¶ 1.) Nor do Defendants contend that Plaintiff did not suffer any damages in her constructive discharge. (ECF No. 54 at 9; ECF No. 34 at 23–25.) Therefore, the Court need only assess whether Plaintiff put forth sufficient evidence of her constructive discharge.

"The doctrine of constructive discharge seeks to address the situation where, '[i]n an attempt to avoid liability for wrongfully discharging an employee, an employer may refrain from actually firing an employee, preferring instead to engage in conduct causing him or her to quit.'" *Juell v. Forest Pharm., Inc.*, 456 F. Supp. 2d 1141, 1151 (E.D. Cal. 2006) (citing *Colores v. Bd. of Trs.*, 105 Cal. App. 4th 1293, 1305 (2003)). Plaintiff alleges that she was constructively discharged several months before she was officially terminated by Defendants. Defendants maintain that: 1) Plaintiff cannot prove that intolerable working conditions existed; and 2) Defendants were not notified of the alleged intolerable conditions. (ECF No. 34 at 23–25.)

*i. Intolerable Working Conditions*

To claim constructive discharge, an employee must allege that conditions in their former employment were so intolerable or egregious that a reasonable employee would have no choice but to resign. *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1244 (1994). The conditions of employment must be such that a reasonable employee would feel resignation was the only option, not simply one rational option of several for dealing with the conditions. *Vasquez v. Franklin Mgmt. Real Estate Fund, Inc.*, 222 Cal. App. 4th 819, 827 (2013). Whether the conditions of employment at issue would force a reasonable person to resign is normally a question of fact and

is determined by the totality of the circumstances. *Velente-Hook v. E. Plumas Health Care*, 368 F. Supp. 2d 1084, 1101 (E.D. Cal. 2005).

Defendants argue that a reasonable employee would not find the circumstances of this case to be intolerable. Defendants maintain that Plaintiff has not demonstrated that Defendants failed to accommodate her disability. (ECF No. 34 at 23.) Defendants further argue that, even if their conduct was unlawful, the existence of mere illegal conduct does not make a workplace intolerable. (ECF No. 34 at 24.) Defendants maintain that "Plaintiff clearly has numerous other options other than considering herself to have quit her job" and cite as evidence the fact that Plaintiff retained counsel to correspond with Defendants in April 2012. (ECF No. 34 at 24.)[5]

This Court has already determined that Plaintiff has submitted sufficient evidence for a trier of fact to find that Defendants failed to accommodate her disability. *See* Section IV.b., *supra*. Thus, the primary inquiry on this issue is whether Plaintiff reasonably felt that she had no other option than to resign.

Plaintiff asserts that she was forced to go on medical leave and sought an accommodation from Defendants to return to work on several occasions. First, Plaintiff states that on December 24, 2011, she presented to her store manager a physician-certified disability certificate stating that she needed a sedentary position with no walking. Plaintiff alleges that her store manager refused to accept the certificate and declined to help her find an accommodation. As a result, Plaintiff felt forced to go on medical leave because she could not work without an accommodation. (ECF No. 38 at 10.) Second, Plaintiff provided evidence of paperwork she submitted to Defendants on January 4, 2012, indicating that Plaintiff was able to work, but would need to be off her feet. The day before that submission, she alleges that she contacted her store manager seeking a desk job as an accommodation. (ECF No. 38 at 11.) Third, Plaintiff alleges that she again contacted her store manager on February 2, 2012, explaining that she needed help finding an accommodation so that she could return to work. She states that she was told there were no other positions available. (ECF No. 38 at 12.) Fourth, Plaintiff stated that she was told by Sears that they could not seek an

[5] Defendants also argue that Plaintiff was mistaken in her belief that her leave status was changed from "medical" to "personal" in February 2012. (ECF No. 34 at 23.) The Court declines to address this argument and reaches its findings without considering Plaintiff's allegations on this issue.

accommodation for her until an outstanding disability pay issue was resolved. (ECF No. 38 at 13.) Fifth, Plaintiff again contacted her store manager seeking on accommodation on February 13, 2012, and states that she was told no positions were available and presents deposition testimony indicating that her store manager did not discuss possible accommodations with 88 Sears. (ECF No. 38 at 13.) Sixth, on or about March 14, 2012, Plaintiff provided evidence that her store manager was aware that Plaintiff was seeking an accommodation in order to return to work, but states that her store manager told her no positions were available. (ECF No. 38 at 13–14.) Seventh, Plaintiff provided evidence of an email she sent to her store manager saying, "Can you check with your connections and let me know if there are any accommodations[?]" Plaintiff states that she did not receive a response to her email. (ECF No. 38 at 14.)

Plaintiff's allegations and supporting evidence could reasonably lead a trier of fact to conclude that Plaintiff's work conditions were intolerable. *Velente-Hook v. E. Plumas Health Care*, 368 F. Supp. 2d 1084, 1102 (E.D. Cal. 2005) (declining to grant summary judgment where defendants offered some accommodations, although not all accommodations requested, and sought to engage in an interactive dialogue with plaintiff while she was on medical leave in an effort to ensure her return). Defendants' assertion that they accommodated Plaintiff with additional leave misses the mark. Plaintiff provided evidence that she tried to return to work with accommodations on multiple occasions. It is a logical conclusion that medical leave (even if generously granted by an employer) cannot be infinite and that Plaintiff was destined to be terminated if she did not return to work. Thus, this Court finds sufficient evidence for a trier of fact to determine that a reasonable employee would find such a work arrangement intolerable.

*ii. Defendants' Notice of Intolerable Working Conditions*

California requires that the employer have actual, rather than constructive, knowledge of the conditions. *Erdmann v. Tranquility Inc.*, 155 F. Supp. 2d 1152, 1164 (N.D. Cal. 2001). Therefore, the conditions must be either intentionally created, or knowingly permitted, by the employer to force the employee to resign. *Mullins v. Rockwell Internat. Corp.*, 15 Cal. 4th 731, 737 (1997). An employee is required to notify someone within a position of authority within the employer of the intolerable conditions. *Gibson v. Aro Corp.*, 32 Cal. App. 4th 1628, 1638 (1995).

Defendants' brief on this point is unclear. It appears their primary argument is that Plaintiff cannot establish that she actually resigned due to intolerable work conditions because she did not explicitly tell Defendants she was resigning for that reason. (ECF No. 34 at 23.) However, Defendants' brief does not point to any case law indicating that Plaintiff must explicitly tell someone "that her work conditions were so intolerable that she had no other choice but to resign." (ECF No. 34 at 23.) Therefore, the Court does not consider that argument. However, the Ninth Circuit does require that Plaintiff offer evidence that Defendants were aware of the intolerable conditions. Based on the evidence discussed in the previous section, the Court holds that a reasonable trier of fact would have sufficient evidence to determine that Defendants were aware that Plaintiff needed an accommodation to return to work and was unable to get one. *See* Section IV.d.i., *supra*. As such, Defendants had actual knowledge that Plaintiffs work arrangement without an accommodation for her condition was intolerable.

**CONCLUSION**

For the reasons set forth above, the Court hereby DENIES IN PART and GRANTS IN PART Defendants' Motion for Summary Judgment or, in the alternative, Summary Adjudication. (ECF No. 34.) The Court rules as follows:

1. Defendants' motion is DENIED as to Count I;
2. Defendants' motion is DENIED as to Count II;
3. Defendants' motion is GRANTED as to Count III; and
4. Defendants' motion is DENIED as to Count IV.

Dated: January 14, 2015

Troy L. Nunley
United States District Judge